# Ayer to use of Ayer et al. *v.* United States Rubber Co., Appellant.

*Contract — Commissions under contract for placing advertise-
ments—Rescission—Commissions for services after rescission—
Custom—Evidence.*

1. Where an advertising agency has contracted for placing ad-
vertisements for a customer for the three branches of the latter's
business, subject to three months' notice of termination, and the
customer gives the three months' notice in general language that
might cover the three contracts, but the agency in reply con-
strues the notice as applying to the contracts for only two of the
departments, and this construction is acquiesced in by the custo-
mer, the latter cannot subsequently claim that the third contract
was not left in force.

2. In an action on a contract for commissions for placing ad-
vertising, where the evidence submitted to the jury tends to show,
and the jury finds, that the defendant breached the contract,
plaintiffs are entitled to be compensated at the contract price, less
such sums as would properly represent the cost and expense to
them to perform the service which remained unperformed because
of defendant's refusal to permit them to do so.

3. Where such a contract provided for "placing the advertising,"
and there is testimony that these words meant "reserving space
for the publishers and arranging for the cost thereof," and such
meaning is not inconsistent with the general terms of the contract,

plaintiffs are entitled to their commissions if it appears that they had arranged with the publishers for a reservation of space at certain times and in certain quantities.

4. If in such case where there is evidence on the part of defendant that placing the advertising meant more than the mere reservation of space, and included preparation of the advertisement, checking of publications and other matters, the question raised by such evidence is for the jury.

5. Where an advertising contract is rescinded on three months' notice as provided therein, the agency is not limited to damages for three months after the notice, it is entitled to commissions on all services required of and performed by it to earn its full commissions on the advertising already placed for the future.

6. A trial judge commits no error in rejecting testimony to show that it was customary in the advertising agency business for the agent, on cancellation of the contract, to turn over all matters to his successor without charge beyond the date of cancellation of the agreement, where the evidence fails to show the required uniformity to establish a custom.

7. Where an advertising contract is breached by the customer of an agency, and it is shown that the agency actually completed all that it was required to do under the contract, it is entitled to its commissions regardless of the question of profits.

8. In such case, if the agency did not perform in full, it was entitled to its commissions less what it would have cost it to complete performance.

Argued January 6, 1925.  Appeal, No. 17, Jan. T., 1925, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1921, No. 8874, on verdict for plaintiff, in case of F. Wayland Ayer, trading as N. W. Ayer & Son, to use of F. Wayland Ayer et al., late copartners, trading as N. W. Ayer & Son, v. United States Rubber Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.  Affirmed.

Assumpsit for commissions.  Before McCULLEN, J.
The opinion of the Supreme Court states the facts.
Verdict and judgment for plaintiff for $178,620.87. Defendant appealed.

*Errors assigned* were various rulings and instructions, qoting record.

*Edward H. Hart,* of the New York Bar, with him *William A. Carr, Sidney L. Krauss* and *Paul H. Arthur,* for appellant, cited: Flegal v. Hoover, 156 Pa. 276; Dreifus v. Salvage Co., 194 Pa. 475; Zeigler v. McFarland, 147 Pa. 607; Knauss v. Shiffert, 58 Pa. 152; Lyon v. Pollard, 87 U. S. 403; Wilkinson v. Boro., 215 Pa. 486; McLane v. Rys., 230 Pa. 29; Lentz v. Choteau, 42 Pa. 435; Wilson v. Wernway, 217 Pa. 82.

*Ralph B. Evans,* with him *Joseph J. Brown* and *Henry P. Brown,* for appellee, cited: Albus v. Toomey, 273 Pa. 303; Harlow v. Beaver Falls, 188 Pa. 263; Person & Riegel v. Lipps, 219 Pa. 99; Frazier v. Funk, 15 S. & R. 26.

OPINION BY MR. JUSTICE FRAZER, February 9, 1925:

Defendant is a corporation engaged in the manufacture and sale of rubber goods, its business being conducted under three general departments known as the mechanical goods division, the footwear and clothing division and the tire division. Plaintiffs, who are advertising agents, agreed to handle defendant's advertising, for the first two departments, on offer dated April 15, 1916, written by defendant to plaintiffs, wherein it was stipulated, inter alia:

"You are to place all our newspaper and periodical advertising, as ordered by us, during one year from the date of your acceptance and thereafter until this agreement is terminated by at least three months' written notice by either you or us.

"You are to secure for us the best terms you can, charging our account just what you credit the parties with whom you deal. All prices are to be entirely confidential.

"In the event of our wishing such services you are to prepare advertisements for use in the advertising described above. You are to charge for work done by artists of your staff. For any expense incurred in such

service outside of your organization, you are to charge us just what you credit the parties with whom you deal.

"For engravings, electrotypes and other cuts you are to charge our account just what you credit the parties with whom you deal.

"To the aggregate of charges for which provision is made above, you are to add fifteen per cent (15) for your service and compensation.

"You are to give us the benefit of all cash discounts allowed you by any publications or by any parties furnishing you any of the foregoing articles, if and only if payments to you are made within the discount time allowed you by the respective parties.

"In the event of our wishing you to assist us, or to act for us in the production of other advertising matter and material, you are to charge for the service rendered and material furnished. An estimate of cost of such service and material is to be furnished us on request.

"Should we desire to use any form of advertising not specified in this agreement, we shall expect you to assist us, if desired, in the consideration and preparation of it; the charge for such service to be determined by special agreement.

"Expense incurred for the carriage of advertising matter or material and in the purchase of wrapping boxes for same are to be charged to us at the net cost to you."

Services were rendered and paid for under this con-contract, and, on December 31, 1917, a further agreement was made for advertising products of the tire department:

"On the general terms set forth in our letter to you of April 15, 1916, subject, however, to the exclusion of your having any interest in any outdoor advertising that we may do either 'in paint or paper' and foreign advertising and trade papers other than affording us your advice, for which you agree to make no additional charge, except and unless the amount of time or service

so called for shall seem to demand and warrant an additional charge as may be mutually agreed upon; and subject further to the agreement on the part of your firm to so equip your New York office with such men as to give us at all times the service that the demands of our account warrant in our judgment."

These contracts both continued in force, as made, with the exception that the rate of compensation was subsequently increased to 16 2/3% until May 7, 1919, when defendant, having become dissatisfied with the service rendered, appointed a committee for the purpose of reviewing the entire subject of their advertising, whereupon plaintiffs advised defendant, in writing, that in view of such examination and in order to permit investigation to proceed "unhampered by present affiliations, we suggest that the agreements existing between us for the care of your newspaper and magazine advertising be considered as null and void upon the completion of the orders in hand and now on our books.

"Should occasion arise for any special work meantime, we shall be pleased to carry out your wishes.

"So long as we are executing orders and fulfilling contracts, we shall, of course, continue to serve you to the best of our ability."

As a result of the investigation by the committee mentioned, defendant wrote plaintiffs on June 23, 1919, on a letterhead of "mechanical goods division," as follows:

"Following my conversation with Mr. Fry, will you please take this formal notification of the three months' notice required in our agreement of April 15, 1916, for termination of our working agreement. We would like, of course, for you to see through to a conclusion that advertising for which you have already arranged.

"This letter may also be taken as an acceptance of the suggestion in your letter of May 7, 1919, to Mr. Gunn, that the agreement existing between us be as considered null and void upon the completion of the orders in hand and now on your books.

"There are certain portions of our advertising which we shall wish to have you continue, for a time, as outlined in my conversation with Mr. Fry and as we may arrange with you from time to time."

This was followed by another letter written on the general letterhead of defendant company, dated June 24, 1919, stating, after a verbatim repetition of the first paragraph of the letter of the previous day:

"This letter may also be taken as an acceptance in so far as the Footwear and Clothing Divisions are concerned of the suggestion in your letter of May 7, 1919, to Mr. Gunn that the agreement existing between us be considered as null and void upon the completion of the orders in hand and now on your books."

The two communications above were acknowledged by separate letters, both dated June 27, 1919, and referring to the cancellation of contracts relating to the mechanical goods division and the footwear and clothing division respectively. These contracts were thus cancelled and plaintiffs completed the work then under way and received payment therefor and no claim is made in these proceedings with respect thereto. The facts are recited here because of their bearing on subsequent events.

Plaintiffs continued handling the tire advertising for defendant until December 15, 1919, when defendant wrote them stating:

"After full consideration, we have decided to place the handling of our tire advertising account with another firm from January 1, 1920. As I told the several representatives of your firm who were in conference with us a few days ago that we would arrive at a decision as to our agency relationship immediately, I am writing you in fulfillment of that promise.

"You will, I know, co-operate in the adjustment of any outstanding business, and in the proper transfer of our business to the agency selected."

On receipt of the above notice, which plaintiffs accepted as a notice of the termination of the contract in three months as provided in the original contract, plaintiffs wrote defendant as follows:

"In our letter of May 7, last, we suggested that you consider yourself released from the then existing agreement between us for the care of your advertising, with the understanding that orders in hand or contracts made on your account or which might subsequently be made on your account, would be completed by us to the best of our ability.

"In conformity with that understanding we shall within a few days advise you the exact status of our outstanding obligations in this connection."

This was not satisfactory to defendant, however, who notified plaintiffs they would be called upon to transfer all advertising reservations to a new agency. To this plaintiffs replied:

"If it is your wish that some other than ourselves furnish the copy to publications with which we have contracted on your account, we will not object, though it would be our preference to give you the advantage of our full service as provided in our working agreement.

"On your request we will at once make all contracts with publishers on your account available to your order, but we shall expect payment of the amount of our commission in due course."

A dispute then arose as to the proper amount of such commissions and plaintiffs began this action, claiming a total 16 2/3% commission amounting to $167,535.71 with interest from December 31, 1920.

The trial lasted nine days and the printed record contains 1,254 pages. The trial judge submitted to the jury the various questions of fact in issue between the parties and the jury rendered a verdict in plaintiffs' favor for the full amount of their claim. Defendant's motion for a new trial was overruled and judgment entered on the verdict, whereupon this appeal followed.

Plaintiffs' claim for compensation is based on full commissions for advertising procured or inserted by them previous to January 1, 1920. They aver that, to secure space in the various periodicals, it was necessary to procure the reservations many months in advance of the actual date of publication, and that, accordingly, during the fall of 1919, and previous to December 15th, they proceeded to negotiate with the publishers reserving space and rates for the advertising during the year 1920, which acts were subsequently approved by defendant; that during the fall of 1919 publishers contemplated an increase in charges for advertising in the near future and, to avoid paying such increase, it became necessary to place the advertising before any change in rates was decided upon; that subsequent to the notice of December 15th, defendant accepted the benefits of such contracts and reservations and, in view of the fact that the advertising was placed and the work required of plaintiffs under their contract necessarily performed previous to its cancellation, plaintiffs were entitled to full commissions thereon. On the other hand, the defense was that the notice of June 24, 1919, was a notice of termination of all contracts as of September 24, 1919, including the tire division advertising, except that plaintiffs were to carry to conclusion the advertising that had been approved and already in process at that time; that any contract for advertising entered into by plaintiffs, or reservations made by them, for the year 1920, were made without authority; that it was the usual and customary practice in advertising business that reservations which had been made on account of the principal before the termination of the contract were to be transferred to the new agent selected by the principal to be completed by such new agency; that, as a matter of fact, defendant had placed its advertising business in the hands of a new agent who had proceeded to take over the work and entered into contracts with the publishers on his own account and on behalf of

defendant: that, since January 1, 1920, plaintiffs had not performed any work in connection with defendant's advertising because the latter refused to permit plaintiffs to act with reference thereto: that, at all events, to be entitled to the full rate of compensation, it would have been necessary for plaintiffs, not only to place the advertising, but also to prepare and supervise the copy and submit the same to defendant for approval; furnish certain services agreed upon through the plaintiffs' New York office; send copy to the publishers and keep check upon publications to see they were in accordance with the contract and properly inserted in the publication; claim rebates for failure to insert advertisements, and check up and pay bills and rebill them to defendant and keep proper accounts; none of which services were performed by plaintiffs in connection with the advertising for the year 1920.

In regard to the question of time of cancellation of the contract relating to the tire division advertising, while the letter of June 24, 1919, was general in its terms and, standing alone, would indicate an intention to terminate all contracts between the parties, it was clearly not so construed by plaintiffs in their acknowledgment of June 27th, referring particularly to the footwear and clothing department, and defendant was thus informed of the construction placed upon the letter by plaintiffs and by it apparently acquiesced in. In addition to this there is oral testimony that defendant did not at the time have under consideration any change in the advertising contract for the tire division and the trial judge properly told the jury that this contract was left in force after the correspondence of June, 1919, up until the letter of December 15, 1919, was written.

In the course of his charge, the trial judge instructed the jury that it was for them to determine whether the letter of December 15, 1919, was, in view of all the circumstances, a rescission of the contract with the consent of plaintiffs, or whether it constituted a breach of

the agreement by defendant and·that if they concluded the former were true, plaintiffs would be entitled to recover the value of the work and services actually performed by them, and in estimating that value they should determine what ratio the service actually performed bore to the whole service contracted to be performed by plaintiffs at the stipulated rate of commission; but that if, on the contrary, there was a breach of the contract by defendant, plaintiffs were entitled to be compensated at the contract price, less such sums as would properly represent the cost and expense to them to perform the service which remained unperformed because of defendant's refusal to permit them to do so. The jury returned a verdict for the full amount of plaintiffs' claim, and defendant now contends that the measure of damage given in event the jury found a mutual rescission of the contract was erroneous, and, since the verdict may have been based on this theory, there was reversible error in the charge.

Under the verdict as rendered by the jury, it is apparent they found there was a breach of contract by defendant and further that plaintiffs had performed all the service they were obliged to render to entitle them to the full commissions stipulated in the contract. But assuming the jury may have concluded there was a cancellation by mutual consent, we find no cause for reversal in the measure of damage laid down by the trial judge. Under the documentary evidence the jury may have concluded that plaintiffs were entitled to full commissions under either view of the case, on the theory that they performed the full services required. The contract merely bound them to "place the advertising" as ordered by defendant. While in a subsequent paragraph it provided that, in event of defendant desiring such service, they were also to "prepare advertisements, making engravings, electrotypes, and other cuts," but for such work extra compensation was provided. The written contract thus seems to indicate the commission

stipulated should be paid for the service of "placing" the advertising. This left the matter open for explanation by parol evidence. A witness for plaintiffs testified "the function of an advertising agent is primarily to place advertising, that is, reserving space for the publishers and arranging for the cost thereof." Another witness testified that placing advertising meant "sending orders to cover the space required to be used." These definitions are not inconsistent with the written portions of the contract and would be sufficient to justify a finding that when plaintiffs arranged with the publishers for a reservation of space at certain times, and in certain quantities, they had placed the advertising within the meaning of the contract, and earned their commissions. While there is evidence that "placing" advertising included something more than merely making the reservations for space, and particularly required the preparation of the advertising, checking of publications, billing to client, etc., this conflicting testimony merely raised a question for the jury. The whole subject was fairly and fully presented to the jury by the trial judge and under the facts we see no cause for reversal on this ground.

The foregoing discussion also disposes of the second question raised by defendant, to wit, whether a verdict for the full amount claimed was excessive and contrary to the evidence. Defendant contends there was additional service which plaintiffs were bound to furnish and that this service would have entailed expense and accordingly defendant was entitled to a deduction therefor and consequently a verdict for the full amount cannot be sustained. The trial judge left to the jury to determine what service, if any, the plaintiffs would have been required to perform to earn their full commission. While there were other services plaintiffs would have performed had the contract remained in force, there is also evidence that had plaintiffs continued with the work during the year their services would have resulted

in additional cost to defendant amounting to from $30,-000 to $50,000, for which plaintiffs would have been entitled as additional compensation. Under this evidence it appears that had plaintiffs been asked to perform further work, the provisions in the contract for additional extra charge would exceed the cost or expense necessarily resulting to them had they been permitted to complete all the work, and the jury could properly find that plaintiffs were entitled to the full amount of their claim.

Defendant further complains of the action of the court in refusing to charge that the letter of December 15, 1919, should be given effect as equivalent to three months' notice under the contract and that damages must be limited to a period not exceeding three months from December 15, 1919, that is, up to March 15, 1920. However, such instruction would have been erroneous if the jury could properly conclude from the evidence that plaintiffs had performed all the services required of them to earn the full commission on the advertising already placed before that date. As a matter of fact, the claim of plaintiffs is based on services rendered before January 1, 1920, and consequently the failure of the court to limit the damages to March 15, 1920, is immaterial. The real question was whether plaintiffs had performed the service required of them to earn their commission on the advertising placed for the future. There is evidence that advertising space was customarily reserved in the months of November and December for the following year and that a great deal of work is required preliminary to the reservation of space and that the necessity of placing the contracts early in the present case was urgent because of the proposed increase in advertising rates for the year 1920.

Defendant offered evidence to show it was customary in the advertising business for the agent, when a contract was cancelled, to turn over all matters to his successor without charge beyond the date of cancellation

of the agreement. The trial judge rejected evidence of this custom on the ground that it failed to show the required uniformity to establish a custom, but, on the contrary, whether the alleged custom prevailed, depended on the circumstances of each particular case. In addition to the reason thus given by the trial judge, it is apparent that the parties, by their contract and letters, had expressly provided for the event which occurred by recognizing the right of plaintiff to be paid for services performed.

Defendant presented a point requesting the trial judge to charge "that the burden of proof was on plaintiff to show the entire cost of completion of the work for which they claimed commissions, as the burden of proof is on the plaintiffs to show what net profits they would have made in completing the contract." The refusal of this point is assigned for error. The claim of plaintiffs is not for loss of profits on the contract, but for commissions due them under the contract on the theory that the work was actually completed. It was not denied that they made reservations for advertising, as claimed by them, and they produced evidence to show they had fully completed all the service required of them. The jury found, as a fact, that such service was performed. If they perform the service they were entitled to their commission, regardless of the question of profits. If they did not perform in full, they were entitled to their commissions less what it would have cost them to complete performance, and the trial judge so instructed the jury. The affirmance of the point would have tended to confuse rather than enlighten the jury.

There are a number of other assignments of error, raising questions of ruling on evidence. We have examined these carefully and find they set forth no reversible error.

The assignments of error are overruled and the judgment is affirmed.